JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWIGHT JOBE, JR., <br><br>    Plaintiff, <br><br>    v. <br><br> HARRIS, ET AL., <br><br>    Defendants. | Case No. 5:22-cv-02276-SPG-MAR <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NOS. 69, 70]** |

Before the Court is the Motion for Summary Judgment (ECF No. 69 ("MSJ")), filed by Defendants Harris, Grajeda, Jones, Garcia, and Hanson (together, "Defendants"), in this action filed by Plaintiff Dwight Jobe, Jr. ("Plaintiff"), alleging under 42 U.S.C. § 1983 that Defendants have chilled Plaintiff's First Amendment rights by retaliating against him for using the prison grievance process. Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this matter suitable for disposition without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment.

## I. BACKGROUND

### A. Procedural History

Plaintiff commenced this action on December 30, 2022. (ECF No. 1). On January 31, 2023, Defendants filed an ex parte application to file a pre-answer motion for summary judgment ("Pre-Answer MSJ") to determine the issue of Plaintiff's exhaustion of administrative remedies under the Prison Litigation Reform Act ("PLRA"). (ECF No. 12). On February 2, 2024, the Court granted Defendants' ex parte application. (ECF No. 14). Defendants filed their Pre-Answer MSJ on February 27, 2023, asserting Plaintiff failed to exhaust his administrative remedies under the PLRA. (ECF No. 21). Magistrate Judge Rocconi heard the Pre-Answer MSJ, and on July 20, 2023, issued, a Report & Recommendation, recommending this Court deny Plaintiff's Pre-Answer MSJ. (ECF No. 33). On August 11, 2023, Defendants objected to the Report & Recommendation. (ECF No. 34). On November 22, 2023, the Court considered and rejected Defendants' objections, and accepted Magistrate Judge Rocconi's Report & Recommendation, denying Defendants' Pre-Answer MSJ without prejudice. (ECF No. 35).

On December 22, 2023, Defendants filed their answer to the Complaint. (ECF No. 36). The Parties proceeded through discovery. On December 2, 2024, Plaintiff filed the instant MSJ, (ECF No. 69), and, due to apparent errors in e-filing, re-filed the MSJ the next day. (ECF No. 70).[1] On December 9, 2024, Defendants filed their reply. (ECF No. 72).

### B. Evidentiary Objections

Plaintiff and Defendants have submitted a number of evidentiary objections, two of which the Court addresses here: (1) whether for the MSJ this Court can rely on Plaintiff's Complaint for Plaintiff's assertions of fact, given that the Complaint has not been verified; and (2) whether the Court can consider facts Plaintiff asserts in support of the MSJ that are contrary to facts asserted in Defendant's Requests for Admission ("RFA"s), which

---

[1] The Court therefore cites to and references the re-filed MSJ and supporting papers at ECF No. 70 throughout this Order.

Defendant served on Plaintiff January 16, 2024, and which were deemed admitted due to Plaintiff's failure to respond to them.[2] The Court addresses these in turn.

        1.       <u>Defendants' Objection to Plaintiff's Unverified Complaint</u>

Defendants correctly points out that Plaintiff has not verified his complaint and therefore it cannot be used as a basis upon which to find a genuine dispute of material fact for summary judgment. (Reply at 3; Joint Appendix of Objections ("JAO") ¶ 18).

On summary judgment, a party must support their assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Importantly, an unverified complaint generally cannot be relied upon to find a genuine dispute of material fact at the summary judgment stage. *Moran v. Selig*, 447 F.3d 748, 759–60 (9th Cir. 2006). In contrast, allegations within a verified complaint, that are based on personal knowledge and sets forth specific facts that are admissible in evidence, may be considered as assertions of fact under Rule 56, and therefore considered at summary judgment. *Schroeder v. McDonald*, 55 F.3d 454, 460–61 (9th Cir. 1995). A complaint may be verified if it contains a statement declaring under the penalty of perjury, that the allegations are true and correct. *See* 28 U.S.C. § 1746. While a Plaintiff need "not follow § 1746's form with precision," he must assert at a minimum in a signed writing that, under the penalty of perjury, the contents of the complaint are true and correct. *See Schroeder*, 55 F.3d at 460 n.10.

---

[2] When determining a motion for summary judgment, the Court considers only evidence admissible at trial, though the form may differ at the summary judgment stage. *Godinez v. Alta-Dena Certified Dairy LLC*, 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016). The Court has reviewed the entire record, including the parties' Joint Appendix of Facts ("JAF"), objections, and evidence. The Court discusses only the facts that are relevant to its decision. For those objections not addressed in this section, to the extent the Court relies on evidence that is subject to an objection, the Court overrules the objection for this MSJ. To the extent the Court does not rely on evidence objected to by the parties, the objections are overruled as moot for this MSJ.

Although Plaintiff's Complaint is signed by him, it does not contain a statement that the Complaint, under penalty of perjury, is true and correct. *See* (ECF No. 1). It therefore cannot be considered a verified Complaint for the purposes of using it as an assertion of fact at summary judgment. *See Scollard v. Stafford Creek Corrections Ctr.*, 2024 WL 4393853, at *6 (Sept. 17, 2024). "This is not a matter of exalting form over substance." *Aviles v. Quik Pick Express, LLC*, 2015 WL 5601824, at *2 (C.D. Cal. Sept. 23, 2015). The Court cannot consider an unverified complaint to be "an assertion of fact" sufficient to support a finding of a genuine dispute. Fed. R. Civ. P. 56(e).

Plaintiff's arguments do not support a contrary result. At times in the MSJ documents, Plaintiff appears to concede that the Complaint is unverified. *See* (JAO ¶ 18 ("[N]ow that Plaintiff has been put on notice of the admissibility of the unverified complaint, he can take action to cure the defect and submit a verified copy . . . .")). However, Plaintiff also contends the Complaint is admissible because the Complaint is attached as an exhibit to Plaintiff's sworn declaration filed in support of the MSJ. *See* (JAO ¶ 18 ("Ex. D is a declaration made by the Plaintiff, to the complaint is attached as a numbered exhibit.")). Plaintiff's declaration includes a signed statement that under the penalty of perjury the information within the declaration is true and correct. (JAE 142). While Plaintiff's declaration is verified by his attestation and signature, there are two issues with his argument that the Complaint is also verified: (1) contrary to Plaintiff's argument, only certain pages of the Complaint are attached to the declaration as an exhibit; and (2) the declaration does not incorporate by reference the Complaint and, therefore, the Court cannot consider it properly appended to the Declaration.[3]

---

[3] Plaintiff's mention in passing of the Complaint in the Declaration does not suffice. Plaintiff states at one point that, "[a]fter filling out grievances, some staff members do refuse to accept them for filing. I attested to that fact in my written complaint as well." (JAE 139 ¶ 6). Plaintiff has not "attested" to any facts in his written complaint, nor could this statement make all of Plaintiff's complaint verified, given that it relates to one specific factual allegation that "some staff members do refuse to accept [grievances] for filing." (*Id.*). Further, it is unclear if this generalized statement is based on "personal knowledge" and "set[s] out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4).

It is not the Court's or the Defendants' responsibility to educate Plaintiff, who is represented by counsel, regarding the requirements for assertions of fact on a motion for summary judgment. *See Porter v. Howard*, 2011 WL 721510, at *1 (S.D. Cal. 2011). Regardless, Plaintiff is indeed on notice of the requirements for material to be verified, given that the issue of verification of Plaintiff's discovery responses was raised during an informal discovery conference in April 2024. (ECF No. 59). Plaintiff had extensive time in discovery since then to either verify the Complaint or support the statements in the Complaint with material that may be considered at summary judgment. Plaintiff additionally had time to remedy the unverified Complaint after the first motion for summary judgment was stricken. *See* (ECF No. 62; ECF No. 62-1 ¶ 50 ("Plaintiff has no documents to support any of the claims alleged in his Complaint.")). Nor does Plaintiff ask in the instant motion—as he could have done under Federal Rule of Civil Procedure 56(e)(1)—for an opportunity to "properly support or address the fact[s]" asserted in the unverified Complaint. Fed. R. Civ. P. 56(e)(1). Instead, Plaintiff states that, because he is now "on notice of the admissibility of the unverified complaint," he can "take action to cure the defect and submit a verified copy of the factual allegations in the complaint." (JAO ¶ 18). Plaintiff's time to do so, however, has long since passed. Because Plaintiff has not presented evidence to this Court why it should consider the Complaint as an asserted fact or why the Court should provide time to verify the Complaint, the Court declines to review the Complaint in determining the MSJ.

        2.     <u>Defendants' Objection Regarding Evidence Inconsistent with the Deemed Admitted Requests for Admission</u>

Defendants additionally contend that Plaintiff cannot rely on material that asserts facts which contradict the material automatically deemed admitted in RFAs served on Plaintiff on January 16, 2024, to which Plaintiff has not responded. (Reply at 4).

"Once a matter has been deemed admitted under Rule 36, even by default, the court may not consider evidence that is inconsistent with the admission." *Am. Gen. Life & Accident Ins. Co. v. Findley*, 2013 WL 1120662, at *2 (C.D. Cal. Mar. 15, 2013); *see also*

1  *999 v. C.I.T. Corp.*, 776 F.2d 866, 869–70 (9th Cir. 1985) ("Evidence inconsistent with a Rule 36 admission is properly excluded."). The Court and the "parties are bound by such admissions, which cannot be ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible." *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1112 (9th Cir. 2006) (citations and quotations omitted). While the court has discretion to permit a late response to requests for admission, it cannot withdraw or amend the admissions unless the responding party so moves. Fed. R. Civ. P. 36(b); *see also Conlon v. U.S.*, 474 F.3d 616, 621 (9th Cir. 2007).

Plaintiff was served with RFAs on January 16, 2024. *See* (ECF No. 59 at 1). To date, and the Court's knowledge, Plaintiff has not responded to the RFAs. There is conclusive evidence that Plaintiff is aware of the deemed-admitted RFAs, including but not limited to the fact that Plaintiff raised the issue of the RFAs in his opposition to Defendants' motion to compel discovery on a separate issue. (ECF No. 57 at 8–10). In a written order, the Court informed the Plaintiff that it would decline to consider the issue of the deemed-admitted RFAs because they were not at-issue in Defendants' discovery motion. (ECF No. 59 at 10). The Court further informed Plaintiff that he "may seek relief from [the RFAs] through [his] own regularly noticed motion." (*Id.*). In addition, the issue of the deemed-admitted RFAs was raised countless times in meet-and-confers and in the now-stricken, previous Pre-Answer MSJ briefing. (Reply at 4–5). Despite this, Plaintiff has not brought a motion to request relief from the material automatically deemed admitted in the RFAs. Nor has Plaintiff raised in his summary judgment briefing any arguments for why the Court should relieve Plaintiff from the admissions.

The Court must therefore find that the material automatically deemed admitted in the Requests for Admission, served on January 16, 2024, is "conclusively established." Fed. R. Civ. P. 36(b). Any evidence presented by Plaintiff that contradicts the RFAs must be ignored by the Court in determining this MSJ. *GTE Directories Corp. v. McCartney*, 11 F. App'x 735, 737 (9th Cir. 2001) ("[I]t is still appropriate to grant [a motion for

summary judgment based on deemed admissions] if the nonmoving party submits admissible evidence that contradicts the deemed admissions, yet fails to file a Rule 36(b) motion.")

### C.     Factual Background

This is an action brought under 42 U.S.C. § 1983, stemming from incidents arising during Plaintiff's detainment at SCF in Riverside County, California. (ECF No. 70-1 ("MSJ") at 10). Plaintiff alleges that he was retaliated against by officers at SCF for filing grievances at various points in time while he was detained at SCF. (*Id.*). In particular, Plaintiff alleges that he "had [his] life threatened by staff and other inmates due to filing or appealing grievances." (JAE 140 ¶ 2). Plaintiff also contends that he was told by Defendant Grajeda that he would be transferred to a new facility "due to [his] grievances," and that he was "transferred only four hours" after the comments by Defendant Grajeda were made to Plaintiff. (JAE 142 ¶ 18). Plaintiff also contends that he was locked in his cell in retaliation for filing grievances. (JAE 139 ¶ 7).

The record reflects the following grievances filed by Plaintiff between July 20, 2022, and December 30, 2022, that were entered into the Jail Information Management System ("JIMS")

1. <u>August 31, 2022</u>: First-level grievance submitted regarding handcuffing of Plaintiff by an "inexperienced officer" during clothing exchange. (JAE 041). Plaintiff did not sign the grievance. (*Id.*).

2. <u>October 9, 2022</u>: First-level grievance submitted regarding Plaintiff experiencing "lingering pain in [Plaintiff's] wrist" and requesting x-rays, which were offered to Plaintiff. (JAE 044–45). Plaintiff signed the grievance. (JAE 044)

3. <u>October 9, 2022</u>: First-level grievance submitted explaining that Corporal Miara (not a Defendant in this suit) locked Plaintiff in his cell in "retaliation," and denied Paintiff evening program in response to an "exchange [Plaintiff] and [Corporal Miara] had prior that evening." (JAE 047). Plaintiff did not sign the grievance form. (*Id.*).

4. <u>October 12, 2022:</u> First-level grievance submitted explaining that Plaintiff "call[ed] for Nurse line" and Deputies Stemm and Dolan (not Defendants in this suit) denied Plaintiff access. (JAE 049). The supervisor who investigated said that Plaintiff did not wake up when called, and the nursing staff considered it a refusal. (*Id.*). The investigating supervisor explained this to Plaintiff. (*Id.*). Plaintiff did not sign the grievance form. (*Id.*).

5. <u>October 13, 2022:</u> First-level grievance submitted explaining that Plaintiff "recently attempted to file a grievance concerning a derogatory verbal exchange between [himself] and Cpl. Miara" that occurred on or about October 8, 2022, around 9:30 pm. (JAE 051). The grievance states that Corporal Miara retaliated against Plaintiff by locking Plaintiff in his cell and denying him evening program, and that Defendants Jones and Garcia "condoned" the "retaliatory" actions of Corporal Miara. (JAF ¶ 37). Defendant Grajeda wrote in the "findings" section of the grievance that Defendant Grajeda would "speak with staff regarding this issue," and that Plaintiff "does not feel this grievance is resolved." Plaintiff signed the grievance form. (JAE 051).

6. <u>October 30, 2022:</u> First-level grievance submitted explaining that on October 20, 2022, Plaintiff's cell was "capped [locked] and [Plaintiff] was not allowed to get [his] canteen due to a confrontation with [Defendant] Jones." (JAE 054). Defendant Grajeda responded that after speaking with Plaintiff, Grajeda will "speak with staff members direct supervisor" in reference to this incident and, although Plaintiff signs the receipt, he is not satisfied with the resolution. (*Id.*). In a supplement to the grievance, Plaintiff asks that money be put back on his books to allow him canteen access. (JAE 055).

7. <u>November 24, 2022:</u> First-level grievance submitted explaining that Plaintiff complained that Defendant Hanson "capped" ("locked") plaintiff in his cell, denying him evening program. (JAE 057; JAF ¶ 39). Plaintiff refused to sign the grievance. (JAE 057).

Additionally, Plaintiff contends that the following grievances were not tracked in JIMS, but were submitted by him and were either lost, intercepted, or destroyed:

1. <u>October 20, 2024</u>: Grievance for which Plaintiff has a "goldenrod copy."[4] (JAE 141 ¶ 17).

2. <u>October 22, 2024</u>: Grievance submitted for which Plaintiff has a "goldenrod copy." (*Id.*)

3. <u>October 31, 2022</u>: Grievance submitted for which Plaintiff has a "pink copy." (*Id.*)

4. <u>November 24, 2022</u>: At least one additional grievance was submitted on November 24, 2022. (*Id.*).

In addition to the grievances described above, Plaintiff submitted a complaint to the Riverside County Sheriff's Office in October 2022, which was responded to on November 4, 2022. (JAE 141 ¶ 16). Plaintiff avers he submitted grievances in addition to those above "in which the copies were destroyed during the many times [he] was retaliated against by staff searching my cell." (*Id.* ¶ 17).

## II.   LEGAL STANDARD

Summary judgment is appropriate where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing the absence of any genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).

---

[4] "Goldenrod copies" are the inmate's receipt for submission of the grievance. (JAF ¶ 22). "Pink copies" are the inmates receipt indicating that the grievance was investigated and discussed with them. (*Id.*)

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (2006) (citation omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that generic disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). No genuine issue for trial exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus.*, 475 U.S. at 587..

### III. DISCUSSION

#### A. Exhaustion

Defendants contend that summary adjudication of Plaintiff's claim of First Amendment retaliation, brought against Defendants under 42 U.S.C. § 1983, is appropriate because (i) Plaintiff failed to exhaust administrative remedies before filing suit, as is required by the PLRA, (ii) Plaintiff failed to show a subjective and objective basis for fear

of retaliation, and (iii) Defendants are entitled to qualified immunity. (ECF No. 70-1 at 2). Plaintiff contends there are genuine disputes of material fact as to the issues above such that summary adjudication is inappropriate. (ECF No. 70-1 at 11). The Court notes that there is nearly a complete overlap between the issue of exhaustion and the merits of Plaintiff's retaliation claims. Therefore, the Court will address together PLRA exhaustion and retaliation, before turning to the issue of qualified immunity.

### 1. The PLRA Exhaustion Requirement

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 742 (9th Cir. 2021) ("Before challenging prison conditions under Section 1983, a prisoner must exhaust 'such administrative remedies as are available.'" (quoting 42 U.S.C. § 1997e(a))). "Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 578 U.S. 632, 648 (2016); *see also Ramirez v. Collier*, 595 U.S. 411, 421 (2022); *Munoz v. United States*, 28 F.4th 973, 975 (9th Cir. 2022) (discussing *Ross*). The exhaustion requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *See Porter v. Nussle*, 534 U.S. 516, 524–32 (2002); *see also Nettles v. Grounds*, 830 F.3d 922, 932 (9th Cir. 2016) (en banc); *Roles v. Maddox*, 439 F.3d 1016, 1018 (9th Cir. 2006).

Because the PLRA requires exhaustion only of those administrative remedies "as are available," 42 U.S.C. § 1997e(a), it does not require exhaustion when circumstances render administrative remedies "effectively unavailable." *See Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022); *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (as amended) ("[F]ailure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court."). There are three circumstances that can make

an administrative remedy "effectively unavailable": "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (per curiam) (as amended) (citing *Ross*, 578 U.S. 632, 643–44 (2016)). "[R]emedies are not considered 'available' if, for example, prison officials do not provide the required forms to the prisoner or if officials threaten retaliation for filing a grievance." *Draper v. Rosario*, 836 F.3d 1072, 1078 (9th Cir. 2016); *see Rodriguez v. County of Los Angeles*, 891 F.3d 776, 792 (9th Cir. 2018) ("[A] prisoner is excused from the exhaustion requirement in circumstances where administrative remedies are effectively unavailable, including circumstances in which a prisoner has reason to fear retaliation for reporting an incident."); *McBride*, 807 F.3d at 987 ("[T]he threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies").

          2.      <u>Whether Remedies Were Effectively Available to Plaintiff</u>

Defendants first contend that Plaintiff did not properly exhaust administrative remedies. (ECF No. 70-1 at 22). Plaintiff does not appear to deny that he did not exhaust administrative remedies. (JAE 142 ¶ 20 ("While under such duress, I exhausted the administrative remedies to the extent that they were available to me given the circumstances." (emphasis omitted)). Instead, Plaintiff contends that administrative remedies were "effectively unavailable" to him. (ECF No. 70-1 at 23).

Failure to exhaust is an affirmative defense that defendants must raise and prove. *See Jones v. Bock*, 549 U.S. 199, 212–17 (2007). Accordingly, Defendants bear the initial burden of proving administrative remedies were available, and the Plaintiff did not exhaust those remedies. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If

Defendants carry that burden, the burden then shifts to Plaintiff to show exhaustion or that the "existing and generally available administrative remedies [were] effectively unavailable to him." *Id.* To do so, Plaintiff "must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal quotation marks and citation omitted). "The ultimate burden of proof, however, remains with the defendants." *Id.*

       a) *Whether Defendants Met Their Burden to Show That Remedies Were Generally Available to Plaintiff*

Here, Defendants have met their initial burden to show there were "existing and generally available remedies" at SCF. *Albino*, 747 F.3d at 1172. Defendants contend that the Riverside County Sheriff's Department's ("RSO") administrative grievance process was adequate and available to Plaintiff. (ECF No. 70-1 at 23). Defendants have pointed to the RSO Policy 507.02 which specifies that grievance forms "will be made available at all times and at all facilities" and such forms will be "maintained in every housing unit" and accessible "without the need to obtain [them] from staff." (JAE 014). The policy further explains that no staff member "can refuse to accept a grievance." (*Id.*). Plaintiff received the Inmate Orientation Pamphlet, which explains to inmates the grievance process (JAF ¶ 31). Plaintiff in fact used the grievance process numerous times. (JAE 141 ¶ 7).

The burden has thus shifted to Plaintiff to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191. Plaintiff can do so by showing that the "local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* Remedies may also be deemed effectively unavailable when a prisoner faces "threat[s] of retaliation for reporting an incident." *McBride*, 807 F.3d at 982. Plaintiff's arguments for "effective unavailability" broadly fall into two categories: (1) that remedies were effectively unavailable due to retaliation by Defendants (ECF No.

70-1 at 25–27); and (2) that remedies were effectively unavailable because correctional officers at the prison improperly handled grievances and did not generally follow grievance protocols outlined in RSO Policy 507.02 and the Inmate Orientation Pamphlet (*Id.* at 25, 28). For the reasons stated below, Plaintiff has not carried this burden.

> *a)   Whether Plaintiff Met His Burden to Show That Retaliation Made Remedies Effectively Unavailable*

Regarding retaliation, Plaintiff argues that he "had [his] life threatened by staff and other inmates due to filing or appealing grievances." (JAE 140 ¶ 12). Plaintiff also contends that he was told by Defendant Grajeda that he would be transferred to a new facility "due to [his] grievances," and that he was "transferred only four hours" after the comments by Defendant Grajeda were made to Plaintiff. (JAE 142 ¶ 18). Plaintiff also contends that his cell was searched on October 20, 2022, "in retaliation for filing grievances."[5] (JAE 139 ¶ 14).

*McBride* establishes a two-pronged test to determine whether threats of retaliation rendered the grievance process effectively unavailable for an inmate: (1) a prisoner must "actually believe[ ] prison officials would retaliate against him if he filed a grievance" (the subjective prong); and, if he makes this showing, then he also must show that (2) "his belief was objectively reasonable" (the objective prong). *McBride*, 807 F.3d at 987. On the subjective prong, the Plaintiff must "sufficiently allege[ ] he was actually deterred from filing a grievance by the guards' threats." *Id.* at 988. On the objective prong, the Plaintiff must show that "a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison's grievance system." *Id.*

---

[5] Plaintiff's Complaint details other instances of retaliation that the Court will not consider here, given that: (1) the Complaint is unverified, and thus contains only allegations, and (2) Plaintiff has not presented any other corroborating evidence to support that these instances of retaliation are "assertion[s] of fact" upon which the Court may rely at summary judgment. Fed. R. Civ. P. 26(e); *see supra* Section B(1).

On the record available to the Court, Plaintiff cannot meet the objective prong to show he was "actually deterred" from filing a grievance by the guards' threats or that "a reasonable prisoner of ordinary firmness" would have felt threatened under the same circumstances. *Id.* Although Plaintiff's declaration includes references to retaliatory actions by prison officials, Plaintiff's declaration contradicts the RFAs that were deemed admitted by Plaintiff's non-response. In particular, Plaintiff is deemed to have admitted that none of the Defendants in this matter threatened his life. (JAE 075–76). Plaintiff is further deemed to have admitted that none of the named Defendants in this matter retaliated against him for filing grievances. (JAE 076). Plaintiff also is deemed to have admitted that he was never deterred from filing grievances or that his right to file grievances was never chilled. (JAE 077). Because the material in the RFAs is deemed "conclusively established," there is no genuine dispute of material fact as to whether Plaintiff had a subjective and objective fear of retaliation that rendered the grievance process effectively unavailable to him. Fed. R. Civ. P. 36(b).

Even if the RFAs were not automatically deemed admitted due to Plaintiff's non-response, the remaining record does not create a genuine dispute of material fact as to whether Plaintiff had a subjective and objective fear of retaliation. *See Conlon*, 474 F.3d at 622 (Rule 36 "is not to be used in an effort to harass the other side or in the hope that a party's adversary will simply concede essential elements") (internal quotation marks and citation omitted).

The record does not show that Plaintiff was "actually deterred" from filing grievances. *McBride*, 807 F.3d at 987. Plaintiff avers he stopped filing grievances because he "didn't think it was worth the risk [he] was taking to continue" doing so. (JAE 141 ¶ 15). Plaintiff also asserts he "took every avenue [he] felt [he] could possibly take at the time without putting [himself] in grave danger." (*Id.* ¶ 16). However, Plaintiff continued to file grievances, even after alleged threatening conduct. For example, Plaintiff alleges that on October 13, 2022, Corporal Miara "retaliated" against him by locking him in his cell and denying him evening program, and that Defendants Jones and Garcia "condoned"

the "retaliatory" actions of Corporal Miara. (JAF ¶ 37). Plaintiff also states that on October 20, 2022, he was locked in his cell "in retaliation for filing grievances." (JAE 139 ¶ 7). But ten days later on October 30, 2022, Plaintiff filed a grievance regarding the October 20, 2022 incident where he asserts he was locked in his cell for filing grievances, and filed at least one more grievance after that regarding a separate incident with Deputy Hanson. (JAF ¶ 38–39).

Further, Plaintiff's declaration makes vague allegations of retaliatory conduct and does not name any of the individual Defendants as taking retaliatory action against him, except for one. In this single instance where Plaintiff does name a Defendant, Defendant Grajeda, Plaintiff asserts that Defendant Grajeda told Plaintiff on November 25, 2022, that he would be transferred to a different facility, allegedly in retaliation for filing grievances. (JAE 142 ¶ 18). Plaintiff contends he was then transferred that same day. (JAE 142). But elsewhere, Plaintiff *does not dispute* that he was transferred to another facility on November 26, 2022, *not* November 25, 2022. (JAF ¶ 1). Therefore, the Court rejects Plaintiff's argument that he was transferred to another facility for "retaliatory motives." The record shows that Plaintiff's "own account is filled with inconsistencies that undermine his contention that retaliatory threats actually deterred him from filing grievances." *Jones v. United States*, 2019 WL 1301788, at *8 (C.D. Cal. Feb. 25, 2019); *see also Gaines v. Beasley*, 2018 WL 5270539, at *7 (E.D. Cal. Oct. 22, 2018) ("If plaintiff was indeed afraid of the threats . . . then one would assume that plaintiff would not file any staff complaints, let alone those concerning retaliation, for fear of harm. The undisputed facts, however, reveal that plaintiff" pursued grievances). Therefore, with or without the automatically deemed admitted RFAs, Plaintiff has not met his burden under *McBride* to show that he had an objective and subjective fear of retaliation.

                b)    *Whether Plaintiff Met His Burden to Show That Defendants Improperly Handled Grievances*

Plaintiff additionally argues that Defendants improperly handled grievances, by not always follow the established protocol for grievances. Plaintiff asserts in his Declaration

he did not always have access to the lockbox where grievances were collected, including when he was locked in his cell "in retaliation" on October 20, 2022. (JAE 139 ¶ 7). Plaintiff also states that copies of his grievances were "intercepted" or destroyed "during the many times [he] was retaliated against by staff searching [his] cell." (*Id.* ¶ 9, 141 ¶ 17). Plaintiff additionally states that grievance forms were "not readily available to inmates most of the time and have to be requested," and that "some staff members refuse to accept [grievances] for filing." (JAE 139 ¶ 5). He also states that, while the grievance policy is "made clear in the policy handbook," it is not always provided to inmates when they come to the facility. (*Id.* ¶ 3).

To meet his "burden of production," *Draper*, 836 F.3d at 1080, Plaintiff must show that there is "something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. In particular, Plaintiff must "provide some explanation" for the alleged misconduct that resulted in his inability to file grievances. *Draper*, 836 F.3d at 1080.

Plaintiff's "unsupported allegations" are not enough to meet this standard. *Id.* Plaintiff's Declaration makes general statements about the unavailability of remedies, such as the lockbox not being accessible, interception and destruction of grievances, refusal by officers to file grievances, or lack of access to the grievance policy.[6] None of Plaintiff's statements in his Declaration regarding the purported lack of regard for the grievance protocol at SCF name any of the individual Defendants. Further, even though Plaintiff asserts that the Inmate Orientation Pamphlet is always given to inmates generally, Plaintiff

---

[6] Declarations of inmates Eric Jerome Phillips and Nolan Albert Jordan similarly do not assert specific facts sufficient to raise a genuine dispute. To the extent the Phillips and Jordan declarations do assert specific facts, they assert that Plaintiff was subjected to a cell search at a different facility on December 25, 2022, (JAE 171, 174), almost a month after Plaintiff was transferred away from SCF where Defendants worked at the time. (JAF ¶ 1). Declaration by inmate Jerry Roman Hernandez is entirely inapplicable to Plaintiff's claims, because it relates to Hernandez's experiences at a facility other than SCF and Hernandez's own alleged difficulties obtaining medical care through the grievance system. (JAE 176–77).

does not dispute that he received the policy handbook that describes the grievance procedure. (JAF ¶ 31). Plaintiff's proffered copies of grievances, provided for the first time on this motion for summary judgment, also do not meet his burden.[7] (JAE 153–67). Plaintiff provides copies of at least three grievances which he asserts were not accounted for in JIMS, and in total provides five "goldenrod copies of grievances filed" and three "pink copies." *See* (JAE 141 ¶ 7). But aside from providing the Court with these copies, which are not legible due to the light imprint of writing on the receipts, Plaintiff does not provide specific facts to assert that these grievances were submitted, but ignored, intercepted, or destroyed, before being entered in JIMS. At most, Plaintiff has provided "[c]onclusory, speculative testimony . . . that is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984; *see also Meyers v. Kernan*, 2024 WL 1908370, at *9 (E.D. Cal. May 1, 2024) ("conclusory contention that 'grievances' were thrown away is insufficient to meet [the] burden of proof on summary judgment"); *Haskins v. Castellon*, 2020 WL 8413600, at *6 (C.D. Cal. Dec. 17, 2020) (Plaintiff's conclusion that officers "must have tossed" the relevant grievance does not create a genuine issue of material fact."); *Ransom v. Lee*, 2019 WL 1495040, at *8 (C.D. Cal. Mar. 18, 2019) (allegation of "intercepted" or "destroyed" grievance is not enough on summary judgment); *Wilson v. Price*, 2017 WL 5484063, at *6 (E.D. Cal. Nov. 15, 2017) ("Vague assertions that prison officials did not process an inmate's appeals, or stopped them from being processed, are insufficient.").

---

[7] The Court also notes that Plaintiff asserts he "turned over" these copies in discovery. (JAE 141 ¶ 17). However, Defendants have raised that these materials were never produced in discovery—despite being ordered by the Court to be produced—and are now for the first time being appended to the MSJ. (JAF ¶ 15 ("Plaintiff failed/refused to produce any documents in response to Defendants' Demand for Production of Documents, even after being ordered by the Court to produce any responsive documents . . . .")). Attaching an item to a summary judgment motion is not "turn[ing] over" material in discovery to another party, which gives the Court significant concerns regarding the veracity of Plaintiff's declaration to which the copies are attached.

Therefore, on the summary judgment record, Plaintiff has not met his burden to show that RSO's generally available grievance process was effectively unavailable to him, either due to retaliation by Defendants or by improper handling of grievances.  The Court therefore finds that Plaintiff has not exhausted available remedies as required by the PLRA.  The Court thus grants summary judgment to Defendants on Plaintiff's 42 U.S.C.§ 1983 claims.

### B.    Qualified Immunity

Because the Court finds that Plaintiff has not exhausted his remedies under the PLRA, the Court need not address the issue of whether Defendants have qualified immunity for the conduct at-issue in this suit.

## IV.    CONCLUSION

For the foregoing reasons, the Court it is hereby ORDERED and AJUDGED that Defendants' motion for summary judgment is GRANTED.  The Court DIRECTS the Clerk to enter Judgment for the Defendants, and dismisses this action with prejudice.

**IT IS SO ORDERED.**

DATED: April 11, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE